**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

**William Louis Armstrong,**
**2580 S 34th St Milwaukee, Wi 53215**
**In the capacity of a class representative.**
**Plaintiff**

**VS**

**Boyland Auto BGMC, LLC**
**606 SE 117TH AVE, SUITE 100, VANCOUVER , WA 98683.**
**Defendant,**
**General Motors**
**100 Renaissance Center, Detroit, MI 48243**
**Defendant,**
**Kunes Buick GMC**
**7020 S 27th St Suite A, Oak Creek, WI 53154**
**Defendant,**
**Automotive Experts LLC**
**421 9TH ST, NEW ORLEANS, LA 70118 (domicile address)**
**5500 PRYTANIA ST #534, NEW ORLEANS, LA 70115 (mailing address)**
**Defendant,**
**National Business Brokers**
**100 Spectrum Center Drive ,Suite 900, Irvine, CA 92618**
**Defendant,**
**Dorian Boyland**
**6219 LOUISE COVE DRIVE, WINDERMERE, FL 34786**
**Defendant,**
**Kaufman Dolowich**
**30 N La Salle St Suite 1700, Chicago, IL 60602**
**Defendant**

**Federal case number:**
**Name of the court: Eastern District of Wisconsin**
**Venue: Milwaukee**
**Designation: Complaint.**
**Case type: Civil**
**Case description: Racketeer Influenced and Corrupt Organizations**
**Case code: 470**
**Class action. Claim over dollar limit.**

(1)
**Article iii standing**

Plaintiffs suffered injuries including not receiving debts owed under Wisconsin Statute 100.171, not receiving debts owed under Washington state RCW title 19 chapter 19.170.060, and the

deprivation of that property was an injury to plaintiffs property and businesses by violations of title 18 1962 and Wisconsin statute 946.83.

(2)
Plaintiffs' injuries are traceable to the parties to the racketeering enterprise because they included the promoter and sponsor of the written prize notices, and so were liable in the first instance for the payment of the prizes.

(3)
Plaintiff's injuries under the state and federal rico laws are traceable to the named defendants because they were principals in the pattern of racketeering activity through which the plaintiffs have been deprived of property that we were owed, and through which plaintiffs will be permanently deprived of such property because of their racketeering choices.

(4)
Plaintiff's injuries were directly, proximately, and in fact, caused by the unlawful actions of the defendants.

(5)
Plaintiffs injuries are likely to be redressed because the plaintiff's are likely to recover and the court is able to order the payment of money owed. The court can order the defendant to pay the money that they owe the plaintiff's.

(6)
The injuries are also redressable because the court has original federal question jurisdiction over the federal RICO claims under title USC 18 1964 by operation of title 28 section 1331. By operation of USC title 28 1367, the court also has supplemental jurisdiction over the Wisconsin state rico claims under Wisconsin statute 946.87 (4), the Wisconsin written prize notice statute claims under Wisconsin statute 100.171 (9) (a), and the claims under the Washington written prize notice statute under RWC title 19 19.170.060.

The pattern of racketeering activity participated in by each of the named defendants caused the plaintiffs to be deprived of money at an amount equal to Boyland auto bgmc llc's obligations under written prize notice laws, which constituted injury to our property and businesses.

(7)
**Class action averments**

There's just under of one hundred thousand recipients of written prize notices sponsored and promoted by Boyland auto bgmc llc, who are each owed debts under the written prize notice laws, and injured in their businesses and property by the patterns of racketeering activity herein alleged. The class is so numerous that joinder of all the members is impracticable.

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

(8)
There are questions of law and fact common to the class, including the fact of the amount represented by the prize notices, and questions of whether or not any given person actually engaged in a pattern of racketeering activity, and so on.

(9)
My claims are typical of the claims of the class. I will fairly and adequately protect the interests of the class.

(10)
Prosecuting the actions separately by individual class members will create the risk of differing adjudications, that would establish incomparable standards of conduct for the defendants.

(11)
Adjudication of my claims as a practical matter would be dispositive of the interest of other parties not members to this specific action.

(12)
Questions of law and fact common to the class members predominate over any questions affecting me individually, and a class action is superior to any other methods for fairly and efficiently adjudicating the controversy.

I'm seeking certification of a class comprised of households that received relevant versions of moneyopoly written prize notices, including without limitation the version sponsored by Boyland auto bgmc llc and received by named plaintiff.,

(13)
**Count 1**
**Violation by Boyland Auto bgmc llc of Wisconsin statute 100.171**

Boyland Auto BGMC LLC did mail written prize notices that represented to the recipients that we had been selected to receive a particular prize.

(14)
They directly represented that the recipients had been selected to win a particular prize. In the alternate, they represented by implication that the recipients had been selected to win a particular prize.

(15)
The particular prize that was represented to the recipients that they had won was $2,500 United States Dollars.

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

(16)
In the same manner that it was represented to us that we had been selected to receive a particular prize, it was represented to us that we had been awarded that particular prize.

(17)
Boyland Auto BGMC llc intended the recipients to be put under the impression that the recipients had won the particular prize $2,500.

Because they represented to the recipients that the recipients had been awarded $2,500, they owed each of the recipients $2,500.

(18)
Boyland Auto BGMC LLC refused to satisfy their obligations under Wisconsin statute 100.171 (5) (a) by refusing to furnish the prizes. Boyland auto bgmc llc refused to furnish the prizes on grounds that applied generally to the class.

(19)
The recipients of the written prize notices are suffering a pecuniary loss of $2,500 dollars each, and by operation of Wisconsin statute 100.171 (9) (a), the people who haven't been paid the $2,500 dollars that they're owed are entitled to $5,000 each.

(20)
I am one of those persons, who is owed $5,000 by Boyland auto bgmc llc.

(21)
My household received a written prize notice in the mail. The mail was addressed to a named household member or current resident
 My mother was the named recipient, and I was a current resident. I'm the owner of the particular item of mail and own all rights relating to that mail.

(22)
Because Boyland Auto BGMC LLC represented to us that we won $2,500 dollars, they're liable to us each for $5,000 by operation of Wisconsin statute 100.171 (9) (a)

(23)
**Count 2**
**Claims under RCW (Revised code of Washington) title 19, 19.170.060**

(24)
The contents above and below are incorporated herein by reference. This claim is substantially the same as the claim under the Wisconsin written prize notice statute. The only additional thing it requires is that the specific chapter of Washington law was applicable to a specific promotion.

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

(25)
The chapter applies to a promotion if, it's used to induce or invite a person to conduct any business in Washington, or used to induce or invite a person to contact by any means a promoter, or sponser, or their agent, located in Washington state, et al.

(26)
Boyland auto bgmc llc d/b/a All Star Buick GMC was located in part in Washington at the time that plaintiffs were invited to contact them.

(27)
The Washington state legislature recognizes "in part" location within the state of Washington. The liberal construction provisions of RCW 19.86.920 should be applied to RCW 19.170.

(28)
Boyland auto bgmc llc sent a promotion offer that invited the plaintiffs to contact Boyland auto bgmc llc, while Boyland auto bgmc llc was located in part in Washington state, and as part of that promotion offer represented to the plaintiffs that we had been awarded a particular prize, which was specifically, a $2,500 cash prize.

(29)
**Counts 3, and 4,**
**Violations of title USC 18 1962,  and Wisconsin Statute 946.83, by Boyland auto bgmc llc.**

**The predicate acts**

**First predicate act**
**Violation of USC title 18 section 1341 by Boyland Auto bgmc llc;**

Boyland auto bgmc llc, on or about June 27th 2022, in Milwaukee Wisconsin and nearby localities, having devised a scheme or artifice for obtaining property by means of false pretenses, did for the purpose of executing such scheme or artifice, knowingly cause to be delivered by mail according to the direction thereon a matter or thing.

(30)
The things that they caused to be delivered by mail were written prize notices, or generally, printed advertisements containing inducements to call a recorded telephone line.

(31)
The printed advertisements contained directions thereon, according to which they were to be delivered, including the addresses of intended recipients and time sensitive markings with an intended "In home" date.

(32)

The false pretenses included that the recipients had been selected to win a specified prize, specifically $2,500 United States Dollars.

(33)

The property that they sought to obtain, included, recorded speech samples, generated in connection with the mail transactions, and other customer information.

(34)

**Details of the written prize notice**

The written prize notices contained representations that individuals had been selected to win a prize. The written prize notices invited individuals to make contact to obtain further information related to the notice.

(35)

The written prize notices contained a 'game piece' with pull tabs, and a laminated paper portion, the game piece contained symbols which matched in color and shape symbols represented on the laminated portion.

(36)

The laminated portion of the written prize notice contained a box, that box consisted of three boxes, including from top down, a box with an orange background, a smaller box with a white backpack, and a larger box with a white background.

(37)

Printed in the box with the orange backgrounds was the statement "To play simply lift tabs on card. If you match 3 symbols in a row, you WIN!*.

(38)

Printed in the smaller white box were the words " 'Winners, call:' above a telephone number and the words "confirmation code:" above a set of numbers.

(39)

Printed in the larger white box was a statement at the top that said "Then proceed to All Star Buick GMC during event times to claim your prize.*"

(40)

Below that statement, was another statement partly comprised of symbols which are legally words in Wisconsin, and those words were arranged in a list and written in an assortments of colors, each set of words being written in its own color, and lateral to those symbols at substantially the same heights were other words arranged in a list and written in the same colors as the symbols. So the symbols which were words were color matched with words next to them.

(41)
Together the symbols that constituted words and the color matched words next to them formed sentences that said substantially " 'These words'=WIN! 'These other words' ". The words referred to as "these words" are the symbols, excluding the equal sign which is its own word, and the words referred to as "these other words" were, excluding the equal symbol, statements of the different prizes.

(42)
The pulls tabs opened up to reveal the red words which were color matched to the $2,500 prize.

(43)
The natural and ordinary impression given by the written prize notices was that if a recipient revealed a particular set of symbols upon opening the pull tabs, then the recipient had been selected to receive the color matched prize.

(44)
The scheme or artifice to defraud involved sending the written prize notices which were designed to lead people to believe that they had been selected to win the particular $2,500 cash prize, and to use that false pretense to defraud us into providing services as well as other personal information with resulted in the creation of property, including the generation of recorded speech samples, and the providing of personal information to their business.

(45)
**Second predicate act**
**Violation of USC title 18 section 1343 by Boyland auto bgmc llc;**

Boyland auto bgmc llc, on or about June 27th 2022 in Milwaukee Wisconsin and nearby localities, having devised a scheme or artifice for obtaining property by means of false pretenses, did for the purpose of executing such scheme or artifice, knowingly cause to be transmitted by means of wire or radio communication in interstate commerce, sounds for the purpose of executing such scheme or artifice.

(46)
The sounds which they caused to be transmitted included, the sounds made by the  recipients of the written prize notices and the merchants for Boyland auto bgmc llc while speaking to each other on the telephone upon a successful inducement to call.
(47)
The transmissions were in interstate commerce because Boyland auto bgmc llc, was registered as a foreign llc in wisconsin, and because it was conducted in coordination with an additional out of state entity, including at least automotive experts.

(48)
Boyland auto bgmc llc had knowledge that the telephone interactions which they sought to induce would involve the transmission over the wire or radio of sounds in interstate commerce. They knew they were registered as a foreign llc, and if the recipients called there would be transmission of sound.

(49)
The false pretenses included that the recipients were selected to receive a specified prize, specifically $2,500 United States Dollars.

(50)
The property which they sought to obtain included recorded speech samples, generated In connection with the mail transactions, and increments in the value of their intangible assets, et al.

(60)
**Third predicate act**
**Violation of USC title 18 section 1512 (b) (3) by Boyland auto bgmc llc;**

Boyland auto bgmc llc did attempt to corruptly persuade, or engaged in misleading conduct, with intent to, prevent the communication to a law enforcement officer or a judge of the United States of information relating to the commission or possible commission of a federal offense.

(61)
The federal offenses which they sought to prevent the communication of information relating to the possible commission of, include, mail fraud and wire fraud, and witness tampering.

(62)
The misleading conduct that they engaged in, was attempting to convince William Louis Armstrong who was a pro se litigant, during the course of small claims litigation, that a stipulation between Boyland auto bgmc llc and William Louis Armstrong, had been enforceable against William Louis Armstrong, despite William Louis Armstrong having not subscribed in writing to be bound thereby, and despite the stipulation not being made in court and recorded in the minutes thereof, and despite a Wisconsin statute that clearly states that stipulations between parties to litigation short of those two facts are not enforceable.

(63)
They misrepresented laws and facts while soliciting me to sign a non disclosure, the natural and probable consequence of signing that would have been, not communicating information relating to the possible commission of a crime to a law enforcement officer or judge of the United States.

8

(64)

Boyland auto bgmc llc, engaged in this conduct through an agent, specialist through their attorney Stefan Dandelles, and the law firm Kaufman Dolowich and Voluck. Stefan Dandelles misrepresented laws and facts while soliciting me to sign a non-disclosure, while i had claims for mail fraud and wire fraud against Boyland auto bgmc llc, among other claims.

(65)

The specific conduct by Stefan Dandelles. did not constitute lawful, bona fide, representation, because, for reasons including but not limited to, the conduct was tortious, for constituting either, a knowing misrepresentation of law to a third party in violation of Wisconsin SCR 20:4.1 (a) (1), or a failure to provide competent representation to a client in violation of SCR 20:1.1, where competent representation requires the thoroughness and preparation reasonably necessary for representation.

(66)

The conduct was at least tortious under state law and therefore not lawful. The representation that was made was also a fraudulent misrepresentation. The witness tampering was also otherwise unlawful, regardless of whether or not the conduct of Stefan Dandelles was also unlawful under the provisions of a additional law..

(67)

 The acts which constituted witness tampering also constituted wire fraud. There was a scheme to obtain tangible and intangible property, by means of false representations, and for the purposes of executing that scheme, they caused writings to be transmitted over the wire, in interstate commerce.

(68)

**Fourth predicate act**
**Violation of USC title 18 1956 by Boyland auto bgmc llc;**

Boyland auto bgmc llc, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity.

(69)

The specified unlawful activity, included a violation of USC title 18 section 152 (7), where Boyland auto bgmc llc in their personal capacity in contemplation of a case under chapter 11 against themselves or with intent to defeat the provisions of USC title 11 knowingly and fraudulently transferred their property to Kunes Buick GMC.

(70)

The manner in which Boyland auto transferred the property to Kunes Buick GMC constituted a transfer fraudulent as to Boyland auto's creditors under Wisconsin statute 242.04 (1)(a), because they made a transfer with actual intent to hinder a creditor of themselves and also

under 242.04(1)(b) because they Intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

(71)
The manner in which Boyland auto bgmc llc transferred the property to Kunes Buick GMC constituted a transfer fraudulent as to Boyland auto's creditors under 11 United States code 548 (a) (1) (A), because it was made with actual intent to hinder or delay persons to which the debtor was indebted on the date the transfer was made.

(72)
The property involved in the transaction represented the proceeds of specified unlawful activity, because "proceeds" includes the gross receipts, and "conducting" includes "concluding".

(73)
Any property that Boyland auto bgmc llc transferred to Kunes Buick GMC knowingly and fraudulently in contemplation of a case by or against them under title 11, would constitute the gross receipts, and therefore the proceeds, of that specified unlawful activity.

(74)
The transaction was a financial transaction because it in some way or degree affected interstate commerce and involved the movement of funds by wire or other means.

(75)
It affected interstate commerce for the following reasons, because it involved a business registered in Wisconsin as a foreign llc transferring assets within Wisconsin: Because the sale was also brokered by another business National Business Brokers who are registered outside of Wisconsin and involved other parties domiciled in states other than Wisconsin: And because the transaction involved the transfer of property between two GMC licensees where GMC is not domestic to Wisconsin and so the transaction involved the exercise of contractual rights or the use of contractually licensed assets where the contracts were contracts of interstate commerce thereby affecting interstate commerce.

(76)
The transaction was also a financial transaction because, it was a transaction involving the use of a financial institution which was engaged in or the activities of which affect interstate commerce, where financial institution under 18 usc 1956 (c)(6)(A) includes a business engaged in vehicle sales by operation of section 5312 (a) (2) (T) of USC title 31, and again the activities of Boyland auto bgmc llc affected interstate commerce.

(77)
The financial transaction in fact involved the proceeds of specified unlawful activity at the time it was conducted, because "conduct" includes "concluding".

(78)
They concluded or attempted to conclude a transaction where the proceeds were the gross receipts of specified unlawful activity.

(79)
They knew that the property involved in the transaction represented the proceeds of some form of unlawful activity, because they knew that they had contemplated bankruptcy claims under USC title 11 by or against themselves, and they knew that they were transferring property, and they knew that the transfer was fraudulent as to future or present creditors, and they knew it was a felony to do that.

(80)
It was with intent to promote the carrying on of specified unlawful activity, because it was in furtherance of the commission of their own violation of USC title 18 section 152 (7). It was with intent to promote the fraudulent transfer of assets from one GMC entity to another. It was to promote their own carrying on of the specified unlawful activity. Also, the natural and probable consequence of their conduct was promoting the carrying on of the specified unlawful activity, by themselves or other businesses.

(81)
It be here averred that it was also with the intent to promote the carrying on of the following specified unlawful activities: The carrying on of violations of USC title 18 1512 (c) 1, the fraudulent transfer of their business assets was part of a scheme to orchestrate the spoliation of evidence thereby impairing the availability and integrity of evidence of wire fraud and other crimes:

(82)
Also the carrying on of violations of USC title 18 1952, that is Boyland Auto BGMC LLC intended for Kunes to use a facility in interstate commerce and to distribute the proceeds of Boyland Auto BGMC's violation of USC title 18 1957, where the transaction between Boyland Auto BGMC and Kunes was a monetary transaction in criminally derived property of a value greater than $10,000.

(83)
They did so with intent to promote the carrying on of violations of USC title 18 1957 because they Intended for Kunes Buick GMC to sell the cars that constituted the gross receipts of Boyland Auto BGMC's violation of USC title 18 section 152 (7).

(84)
**Fifth predicate act**
**Violation of USC title 18 section 1957 by Kunes Buick GMC, and Boyland auto Bgmc llc as a principal under USC title 18 section 2 (a) and (b);**

Defendant Kunes Buick GMC, engaged in or attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and which was derived from specified unlawful activity within the territory of the United States.

(85)
Boyland auto bgmc transferred assets to Kunes Buick GMC in violation of USC title 18 1956 and USC title 18 section 152 as stated, and so attempts by Kunes Buick GMC to sell such assets, were violations of USC title 18 section 1957 if the vehicles or other assets had a value greater than $10,000, and if they knew that the assets were criminally derived property.

(86)
The offense requires
(A)The act take place within the territory of the United States
(B)The defendant engaged in or attempted to engage in a "monetary transaction"
[C]That the monetary transaction or attempted monetary transaction was in or would have been in criminally derived property
(D)That such criminally derived property had a value greater than $10,000
(E)That such criminally derived property was derived from specified unlawful activity
(F)That the person had knowledge of those facts specified in each previous paragraph

(87)
Actus reus (a) Kunes Buick GMC engaged in the relevant acts within the jurisdiction of the United States.

(88)
Mens rea ()(a): Kunes Buick GMC knew that the conduct they were engaging in took place within the United States.

(89)
Actus reus (b):The transactions were or would be monetary transactions because Kunes buick GMC is a financial institution as defined in section 1956 (c) (6) (A) by operation of USC title 31 section 5321 (a) (2) (T) on account of them being a business involved in vehicle sales, and the attempted transactions would have involved the transfer of funds in or affecting interstate commerce by, through, or to a financial institution.

(90)
 The transfer of funds to Kunes Buick GMC from customers would be in or affect interstate commerce, because the transactions would implicate contracts of interstate commerce, for instance contracts licensing Kunes Buick GMC to distribute GMC products.

(91)
Also because the disposition of the relevant assets at all affects interstate commerce on account of their status as the alleged proceeds of specified unlawful activity or otherwise a fraudulent transfer generally by an entity not domestic to Wisconsin:

(92)
Also because the transactions likely would involve the transfer of funds from, to, through, or between other financial institutions domiciled outside of Wisconsin, specifically if customers are paying in cash they might withdraw money from a bank not domiciled in wisconsin and upon receiving the money it likely would have been deposited in a bank headquartered elsewhere:

(93)
Also because ancillary services antecedent to their disposition by sale of motor vehicles to consumers regularly involves the use of services performed in interstate commerce, including, by having the consumers credit checked by national credit bureaus in interstate commerce, and by having the vehicles shipped in interstate commerce for subsequent delivery.

(94)
They were also monetary transactions because the transactions would have been financial transactions as defined in section 1956, because the attempted transactions would have affected interstate commerce, and involved the transfer of title to vehicles.

(95)
Mens rea (b):Kunes Buick GMC had knowledge of those facts necessary for establishing themselves as a financial institution as defined in section 1956(c)(6)(A), because they knew that they were a business involved in vehicle sales.

(96)
Kunes Buick GMC knew that the sale of those vehicles affects interstate commerce, because the sale of those vehicles involves the exercise of contractual rights between Kunes Buick GMC and GMC entities who are located outside of Wisconsin.

(97)
Kunes Buick gmc also knew that their conduct affected Interstate commerce, because the vehicles are received in Wisconsin having been shipped from out of state, also any manufacturer warranties applicable to the vehicles would be warranties in interstate commerce

(98)
Kunes also knew that the transactions affected interstate commerce because the transactions regularly involve interstate business communication, either between them and credit bureaus directly or through a proxy, or between them and GM financial, or other.

(99)
So, because Kunes buick gmc, knew that they were a financial institution, and knew that the transactions affected interstate commerce, and knew that the transactions would involve the transfer of funds to themselves, they knowingly attempted to engage in a monetary transaction.

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

(100)
Actus reus (c): The transaction was in or would have been in criminally derived property because Boyland auto bgmc transferred those assets to Kunes Buick GMC in violation of USC title 18 section 1956 and USC title 18 section 152, and so those assets constituted proceeds obtained from a criminal offense.

(101)
Mens rea (c): At some point following the transfer of the assets from Boyland auto bgmc llc to Kunes buick GMC, but prior to alleged attempts by Kunes Buick GMC to dispose of those assets in violation of USC title 18 section 1957, Kunes Buick GMC knew that Boyland auto bgmc had fraudulently transferred the assets in contemplation of bankruptcy.

(102)
They knew that because both parties were in privity to the written prize notice debts of Boyland Auto bgmc and a related litigation against Boyland auto bgmc at the time of the transaction between Boyland auto bgmc llc and Kunes Buick GMC.

(103)
They also knew because Kunes Buick GMC was informed directly by me that the assets they received from Boyland auto bgmc llc were the proceeds of a transfer that was fraudulent as to creditors, and that Boyland auto bgmc had a putative class of creditors claiming billions of dollars in damages effective at the time of the transfer.

(104)
That was communicated to the manager Bill at the Oak Creek location. When it was suggested that they might seek rescission of contracts affecting the relevant assets so as to avoid potential issues related to those assets and the fraudulent transfer, Bill clearly expressed their intention to not seek rescission of the contracts, and clearly expressed their intention to ratify the fraudulent transfer for their own benefit and to dispose of the fraudulently received assets as they would in the ordinary course of business, despite the fact that the relevant assets had been fraudulently transferred in contemplation of bankruptcy.

(105)
 So, at the time that Kunes buick gmc attempted the sales of relevant vehicles, they knew that Boyland auto bgmc had transferred the assets to them fraudulently in contemplation of bankruptcy, because they were directly informed by William Louis Armstrong, that the transfer was fraudulent as to creditors, and that Boyland Auto BGMC owed billions of dollars.

(106)
Actus reus (d): Such criminally derived property had a value greater than $10,000 because the assets included new or recent year vehicles that were valued at greater than $10,000.

14

(107)
Mens rea )(d): Kunes Buick GMC had knowledge of the estimated retail value and the suggested retail prices of the vehicles, with the estimated retail value exceeding $10,000 for a number of them.

(108)
Actus Reus (e): Such criminally derived property was derived from specified unlawful activity, because the act by which they obtained that property constituted a violation of USC title 18 section 152, which is specified unlawful activity.

(109)
Since they obtained the assets from acts which were in violation of USC title 18 section 152, that is they were knowingly and fraudulently transferred in contemplation of bankruptcy, the criminally derived property was derived from specified unlawful activity.

(110)
Mens rea (e): At the time of relevant attempts to dispose of the relevant assets, Kunes Buick GMC knew that the assets had been knowingly and fraudulently transferred to them in contemplation of a bankruptcy under title 11, for reasons outlined in (c), et al, and so they knew that the assets were derived from specified unlawful activity.

(111)
So, Kunes Buick GMC, did, within the united states, knowingly attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, and which was derived from specified unlawful activity.

And

(112)
Boyland auto bgmc llc, did wilfully cause Kunes Buick GMC, to attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, and which was derived from specified unlawful activity, under circumstance where Boyland auto bgmc had sufficient mens rea that if they had directly performed the acts themselves it would be the specified offense against the United States..

(113)
**Sixth predicate act, violation by General Motors d/b/a General Motors Company of title 18 section 1952**

General Motors Company used a facility in interstate commerce, with intent to distribute the proceeds of unlawful activity.

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

(114)
The unlawful activity includes violations of USC title 18 1956 and USC title 18 1957. The proceeds include motor vehicles and motor vehicle parts, and money.

(115)
By operating a website GMC is using a facility in interstate commerce. GMC has a website, the website is operated through the use of a computer server, where that server is stored is a facility being used in interstate commerce.

(116)
They operated that website with intent to facilitate the carrying on of unlawful activity and with intent to distribute money laundering proceeds. The violations of USC title 18 1956 and 1957 are being referred to as money laundering, and the gross receipts of those crimes including without limitation motor vehicles and motor vehicle parts and money from the sales therefrom are being referred to as the proceeds. That money laundering was unlawful activity. They're facilitating the carrying on of engaging in monetary transactions in property derived from specified unlawful activity.

(117)
General Motors Company's website lists GMC dealerships. In listing GMC dealerships, they intend to cause the distribution of the inventory of those GMC dealerships. Sometimes the inventory includes money laundering proceeds. General Motors Company knew that and did nothing to stop it.

(118)
It would be practicable for General Motors Company to identify money laundering between GMC entities, so as to prevent the use of their website to facilitate the carrying on of violations of USC title 18 1956 and 1957.

(119)
If GMC had their way, everyone would go to the website, and locate a dealership, and then go there and buy the dealerships entire inventory, and that would happen at every location across the world, daily. That's what they intend, that's what they want to have happen. That's what they're looking to facilitate for every single GMC dealership listed on their website. They make no distinction between GMC dealerships whose inventories have been rightly established, and GMC dealerships whose inventories include money laundering proceeds.

(120)
Having used a facility in interstate commerce with intent to facilitate the distribution of money laundering proceeds, they thereafter facilitated or promoted the carrying on of money laundering.

16

(121)

**Seventh Predicate act, violation by General Motors of title 18 section 1952.**

General Motors used a facility in interstate commerce, with intent to distribute the proceeds of unlawful activity.

(122)

The unlawful activity includes violations of USC title 18 1956 and USC title 18 1957. The proceeds include motor vehicles and motor vehicle parts, and money.

(123)

By operating a website GM is using a facility in interstate commerce. GM has a website, the website is operated through the use of a computer server, where that server is stored is a facility being used in interstate commerce.

(124)

They operated that website with intent to facilitate the carrying on of unlawful activity and with intent to distribute money laundering proceeds. The violations of USC title 18 1956 and 1957 are being referred to as money laundering, and the gross receipts of those crimes including without limitation motor vehicles and motor vehicle parts and money from the sales therefrom are being referred to as the proceeds. That money laundering was unlawful activity. They're facilitating the carrying on of engaging in monetary transactions in property derived from specified unlawful activity.

(125)

General Motors links to the GMC website that lists the GMC dealerships. The GMC website used to facilitate money laundering transactions is what's referred to in a particular General Motors legal notice as a "linked site".

(126)

At investor.GM.com upon scrolling down one would reach what purports to be legal notices of a terms and conditions, the full contents of which follow;

(127)

Begin quote

(128)

"Terms & Conditions

LEGAL NOTICES

PLEASE READ THESE TERMS CAREFULLY BEFORE USING THIS SITE

(129)
THIS WEB SITE (THE "SITE") IS PROVIDED BY GM FOR INFORMATIONAL PURPOSES ONLY. BY USING THE SITE, OR BY DOWNLOADING MATERIALS FROM THIS SITE, YOU AGREE TO ABIDE AND BE BOUND BY THE TERMS AND CONDITIONS CONTAINED BELOW AND ELSEWHERE WITHIN THE SITE. IF YOU DO NOT AGREE TO ABIDE BY AND BE BOUND BY THESE TERMS AND CONDITIONS, DO NOT USE THIS SITE OR DOWNLOAD MATERIALS FROM THE SITE.

(130)
LINKS TO OTHER MATERIALS: As a convenience to you, GM may provide on this Site links to Web sites (the "linked sites") that are operated by other entities. The linked sites are not under the control of GM and GM is not responsible for the content of any linked site or any link contained in a linked site. GM reserves the right to terminate any link or linking program at any time. GM does not endorse companies or products to which it links and reserves the right to note as such on its Web pages. If you decide to access any of the third party sites linked to this Site, you do this entirely at your own risk and it is your responsibility to take all protective measures to guard against viruses or other destructive elements.
APPLICABLE LAWS: This Site is controlled by GM from its offices within the United States of America. GM makes no representation that information in this Site is appropriate or available for use in other locations, and access to this Site from countries or territories where the Site's content is illegal is prohibited. If you access this Site from outside the United States, you do so on your own initiative and you are responsible for compliance with all applicable local laws. These Terms and Conditions of use are governed by the laws of the State of New York, without giving effect to its conflict of laws provisions.

(131)
GENERAL: GM reserves the right, at its sole discretion, to change, modify, add or remove any portion of these Terms and Conditions, in whole or in part, at any time. Changes will be effective when notice of such change is posted. Your continued use of the Site after any changes are posted will be considered acceptance of those changes. You should visit this page from time to time to review the then-current Terms and Conditions because they are binding on you.

(132)
THE INFORMATION CONTAINED HEREIN MAY CONTAIN INACCURACIES AND TYPOGRAPHICAL ERRORS. GM DOES NOT WARRANT THE ACCURACY OR COMPLETENESS OF THE INFORMATION OR THE RELIABILITY OF ANY ADVICE, OPINION, STATEMENT OR OTHER INFORMATION DISPLAYED OR DISTRIBUTED THROUGH THIS SITE OR ANY LINKED WEB SITE. YOU ACKNOWLEDGE THAT ANY RELIANCE ON ANY SUCH OPINION, ADVICE, STATEMENT, MEMORANDUM, OR INFORMATION SHALL BE AT YOUR SOLE RISK. GM RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO CORRECT ANY ERRORS OR OMISSIONS IN ANY PORTION OF THE SITE. GM MAY MAKE ANY OTHER CHANGES TO THIS SITE AND THE INFORMATION CONTAINED IN THIS SITE AT ANY TIME WITHOUT NOTICE.

(133)
IN NO EVENT SHALL GM OR ANY OF ITS SUBSIDIARIES BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, SPECIAL, CONSEQUENTIAL OR OTHER DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY LOST PROFITS, BUSINESS INTERRUPTION, LOSS OF INFORMATION OR PROGRAMS OR OTHER DATA ON YOUR INFORMATION HANDLING SYSTEM) THAT ARE RELATED TO THE USE OF, OR THE INABILITY TO USE, THE CONTENT, MATERIALS, AND FUNCTIONS OF THIS SITE OR ANY LINKED WEB SITE, EVEN IF GM IS EXPRESSLY ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(134)
This website may include forward-looking statements. These statements are based on current expectations about possible future events and thus are inherently uncertain. Our actual results may differ materially from forward-looking statements due to a variety of factors, including: (1) our ability to deliver new products, services and experiences that attract new, and are desired by existing, customers and to effectively compete in autonomous, ride-sharing and transportation as a service; (2) sales of crossovers, SUVs and full-size pick-up trucks; (3) our ability to reduce the costs associated with the manufacture and sale of electric vehicles; (4) the volatility of global sales and operations; (5) our significant business in China which subjects us to unique operational, competitive and regulatory risks; (6) our joint ventures, which we cannot operate solely for our benefit and over which we may have limited control; (7) changes in government leadership and laws (including tax laws), economic tensions between governments and changes in international trade policies, new barriers to entry and changes to or withdrawals from free trade agreements, changes in foreign exchange rates, economic downturns in foreign countries, differing local product preferences and product requirements, compliance with U.S. and foreign countries' export controls and economic sanctions, differing labor regulations and difficulties in obtaining financing in foreign countries; (8) our dependence on our manufacturing facilities; (9) the ability of suppliers to deliver parts, systems and components without disruption and on schedule; (10) prices of raw materials; (11) our highly competitive industry; (12) the possibility that competitors may independently develop products and services similar to ours despite our intellectual property rights; (13) security breaches and other disruptions to our vehicles, information technology networks and systems; (14) compliance with laws and regulations applicable to our industry, including those regarding fuel economy and emissions; (15) costs and risks associated with litigation and government investigations; (16) compliance with the terms of the Deferred Prosecution Agreement; (17) the cost and effect on our reputation of product safety recalls and alleged defects in products and services; (18) our ability to successfully and cost-efficiently restructure operations in various countries with minimal disruption; (19) our ability to realize production efficiencies and to achieve reductions in costs; (20) our ability to develop captive financing capability through GM Financial; and (21) significant increases in pension expense or projected pension contributions. A further list and description of these risks, uncertainties and other factors can be found in our Annual Report on Form 10-K, and our subsequent filings with the Securities and Exchange Commission. GM cautions readers not to place undue reliance on forward-looking statements. GM undertakes no obligation to update publicly or otherwise revise any forward-looking statements.

(135)
Simulated models and pre-production models shown, production vehicles will vary. For information on models shown, including availability, see each GM brand website for details."

(136)
End quote

(137)
In accessing that purported legal notice, it's not necessary that one clicks a box that they agree. It's also not necessary that one even intentionally accesses the document, as it automatically loads upon scrolling down far enough.

(138)
That purported legal notice contains several misleading statements.

(139)
First, General Motors does endorse to some extent companies which it links to. On the General Motors website at GM.com/gm-brands General motors expressly states "Designed to fit individual mobility needs, General Motors is proud of our wide array of brands. Explore our brand personalities and the technology they offer.". That was an  endorsement.  General Motors endorses GMC as one of its very own "Brand personalities", and boasts of their pride in the endorsed company.

(140)
Second, General Motors does have some level of control, constructive or otherwise, over some of the "linked sites", at least as far as those "linked sites" include General Motors self reported "Brand personalities". GM does have control over the GMC website.

(141)
Third, the portion that refers to the terms and conditions as being "binding on you" is misleading. That particular general motors terms and conditions legal notice is a dark pattern, designed to insulate General Motors, subsidiaries and itself, from civil consequences stemming from their criminal conduct, by means of false pretenses.

(142)
The fact that they call it binding on their website does not make it binding on the users of the website. The quoted portion of text taken from the GM website, was not and is not binding, neither on me, nor on prospective class members. .

(143)
That legal notice is not a contract. That legal notice is not even an agreement. Even if that legal notice were a contract, it would be terminable at will, and therefore not binding on anybody, except perhaps general motors themselves.

20

144)
By falsely purporting to release themselves from claims for damages related to their use of the GMC website, General Motors used a facility in interstate commerce with intent to distribute the proceeds of unlawful activity. Then, by thereafter using the GMC website to link to Kunes Bucim GMC in Oak Creek, they thereafter facilitated the carrying on of the attempted sale of the money laundering proceeds, they

(145)
General Motors aided and abetted GMC's violation of title 18 1952. They did so by taking affirmative acts to deter persons injured by such violations from seeking to disgorge GMC of the profit from their wrongful acts, with intent to facilitate the distribute of the money launder proceeds.

(146)
The most relevant part for their act of facilitating money laundering, is the part that purports to release them and their subsidiaries from damages related to their or their subsidiaries uses of the websites.

(147)
By falsely purporting at investor.gm.com to release themselves from liability for civil damages under the racketeering laws including damages for violations of title 18 1952, 1956 and 1957 related to their use of the linked site, General Motors used their website investor.gm.com with intent to facilitate the carrying on of such unlawful activities, and thereafter, by updating the website gmc.ocm to facilitate the distribution of the money laundering proceeds, in our case by listing the  Kunes Buick GMC Oak Creek location who had received the money laundering proceeds and who was attempting to sell those proceeds, General Motors had thereby thereafter promoted or facilitated the promotion or carrying on of that unlawful activity.

(148)
In short, the investor.gm.com website was used with intent to distribute money laundering proceeds, and thereafter they used GMC.com and facilitated the attempted sale of money laundering proceeds.

(149)
It would be practicable for General Motors to identify money laundering between GMC dealerships so as to prevent the use of their website to facilitate the carrying on of violations of USC title 18 1956 and 1957.

(150)
I believe that if General Motors had their way, everyone would go to their website, and use it to reach their subsidiaries linked site, which then be used to locate a dealership, and then go there and buy the dealerships entire inventory, and that would happen with every brand personality and at every location across the world, daily. That's what they Intend, that's what they want to have happen. That's what they're looking to facilitate for every single General Motors brand

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

personality that lists dealerships on their respective linked sites. General Motors makes no distinction between those brand personalities who are using their website to facilitate money laundering transactions, and brand personalities who are not using their websites in that way, and no distinction between such brand personality dealerships whose inventories were rightly established, and those brand personality dealerships whose inventories include money laundering proceeds.

(151)
Having used a facility in interstate commerce with intent to facilitate the distribution of money laundering proceeds, by retaining for their brand personalities money laundering proceeds, they thereafter facilitated or promoted the carrying on of money laundering.

(152)
**Counts 5 and 6, violations of USC title 18 1962 and Wisconsin Statute 946.83, by General Motors.**

The above contents of the complaints are incorporated herein by reference.

(153)
The above predicate acts are part of the pattern that general motors has participated in as a principal.

(154)
General motors, being associated with an enterprise, including its various brand personalities, participated directly and indirectly in the enterprise, by facilitating money laundering transactions, by sending communications over the wire to obtain property by means of false pretenses, and by aiding and abetting acts of racketeering activity, et al.

(155)
So, General Motors associated with an enterprise, and they participated in the enterprise through a pattern of racketeering activity. In violation of Wisconsin statute 946.83.

(156)
General Motors also received income from a pattern of racketeering activity in which they participated as a principal, and used or invested some part of that Income or the proceeds of that income, in the operation of an enterprise the activities of which affect interstate commerce. In violation of USC title 18 1962 (a)

(157)
General Motors also, through a pattern of racketeering activity, acquired or maintained, some interest in or control of an enterprise, the activities of which affect interstate commerce. In violation of USC title 18 1962 (b)

22

(158)
General Motors also, being associated with an enterprise, the activities of which affect interstate commerce, participated In the conduct of such enterprises affairs through a pattern of racketeering activity in violation of USC title 18 1962 [c]

(159)
**A succinct (re)statement of counts 3 and 4, violations of USC title 18 1962 and Wisconsin Statute 946.83 by Boyland Auto BGMC llc, and also the written prize notice claims**

The above predicate acts are herein incorporated by reference.

(160)
Boyland auto bgmc llc, being associated with an enterprise, including General Motors Company and General Motors and Kunes Buick GMC and Automotive experts llc and various individuals, participated directly and indirectly in the enterprise, by engaging in the above mentioned predicate acts that pertain to Boyland auto bgmc llc.

(161)
So, Boyland Auto BGMC LLC was associated with enterprises, and they participated in the enterprises through a pattern of racketeering activity. In violation of Wisconsin statute 946.83.

(162)
Boyland auto bgmc llc also received income from a pattern of racketeering activity in which they participated as a principal, and used or invested some part of that Income or the proceeds of that income, in the operation of an enterprise the activities of which affect interstate commerce. In violation of USC title 18 1962 (a)

(163)
Boyland auto bgmc llc also, through a pattern of racketeering activity, acquired or maintained some interest in or control of an enterprise, the activities of which affect interstate commerce. In violation of USC title 18 1962 (b)

(164)
Boyland auto bgmc llc also, being associated with an enterprise, the activities of which affect interstate commerce, participated In the conduct of such enterprises affairs through a pattern of racketeering activity in violation of USC title 18 1962 [c]

(165)
Boyland Auto BGMC llc dd represent to the plaintiff's on written prize notices that plaintiffs won $2,500 dollars. Boyland auto bgmc llc is liable to the plaintiffs for twice the amount that it was represented to is that we won under Wisconsin statute 100.171 (9) (a).

(166)

Boyland auto bgmc llc, being located in part in the state of Washington, did invite plaintiffs to contact them, and did represent to plaintiffs that plaintiffs had won $2,500 and owes plaintiffs the value of the prize represented to be awarded but not received

(167).

**Statement of a claim against Kunes Buick Gmc**

Kunes Buick GMC,, being associated with an enterprise, including General Motors Company and General Motors and Boyland auto bgmc llc, and national business brokers and various individuals, participated directly and indirectly in the enterprise, by engaging in the above mentioned predicate acts that pertain to Kunes Buick GMC.

(168)

So, Kunea Buick GMC was associated with enterprises, and they participated in the enterprises through a pattern of racketeering activity. In violation of Wisconsin statute 946.83.

(169)

Kunes Buick GMC also received income from a pattern of racketeering activity in which they participated as a principal, and used or invested some part of that Income or the proceeds of that income, in the operation of an enterprise the activities of which affect interstate commerce. In violation of USC title 18 1962 (a)

(170)

Kunes Buick GMC also, being associated with an enterprise, the activities of which affect interstate commerce, participated In the conduct of such enterprises affairs through a pattern of racketeering activity in violation of USC title 18 1962 [

(171)

**Count 7, claim for punitive damages**.

Plaintiff claims that General Motors and Boyland auto bgmc and Dorian Boyland, and Kaufman and Dolowich, et al, had an intentional and gross disregard for property rights of plaintiffs, under such circumstances as are sufficiently aggravated so as to warrant punishment.

Boyland auto had an intentional and gross disregard to plaintiffs property rights to the property that Boyland auto owed us, General Motors, Dorian Boyland, and Kaufman and Dolowich had similar disregard..

(172)

**Demand for judgment**

Plaintiff demands a judgment for money, for the full extent of each defendant's liability under Wisconsin statute 100.171, Wisconsin statute 946.87, RCW 19.170.060, and USC 18 1964.

24

(173)
Plaintiff demands a judgment against each defendant joint and severally as participants in the racketeering enterprise for eight times the amount that the written prize notices represented to us that we won. Three times as injury to our businesses and property under the federal rico law, another two times as injury to our businesses and property under the Wisconsin rico law, another two times under the Wisconsin written prize notice statute, and another once under the Washington written prize notice law.

Furthermore, in the alternate, plaintiff demands Judgment for eight times the amount of the liability for the amount represented to us that we won on the written prize notices, and which is owed under both Wisconsin and 100.171 and RCW 19.170.060, with at least five times that amount being joint and several as racketeering injury. That is five thousand, composed of $2,500 from each of the previous two mentioned laws together $5,000, times eight, including, three times as federal rico injury, another two times as Wisconsin state rico injury, another two times as the liability specifically under the Wisconsin written prize notice statute, and another one time as the liability under the Washington prize promotion law, for a grand total of three billion two hundred and fifty million USD, $3,250,000,000. With at least, two and a half billion, $2,500,000,000, being demanded jointly and severally from parties to the racketeering enterprise.

(174)
Plaintiff seeks a money judgment against each defendant, with joint and several liability as participants in the racketeering enterprise, for the recovery of the full amount owed under the relevant laws.

(175)
Plaintiff also seeks a judgment for punitive damages, against Boyland auto bgmc llc and General Motors, claiming that defendants had an intentional and gross disregard for property of the plaintiffs. My demand for judgment includes punitive damages of at least one and a half times the amount awarded, which if awarded the extent of the previous demand, would be an additional five billion two hundred and fifty million USD, $5,250,000,000.

(176)
The contents everywhere In this complaint are incorporated everywhere else in this complaint. No lack of incorporation should be inferred by the omission of an explicit statement of incorporation.

(177)
**Reasons for non-joinder**

I'm seeking class certification and class counsel should be able to handle the joinders. Also, I don't have enough time to do more at my skill level because I have to or may have to bring the written prize notice claims within two years, and so i have to bring now, , I don't believe they'd be

jointly and severally liable for the written prize notice debt, and i believe they would still be subject to joint and several liability as parties to a racketeering enterprise and possibly punitive, so it shouldn't affect their liability for the majority of the damages sought if at all. Also, i don't believe that they're strictly necessary.

(178)
**Count 8, aiding and abetting, and willfully causing, violations of USC Title 18 1341 and 1343, by Automotive Experts**.

The above predicate acts, include acts which automotive experts participated in as a principal within the meaning of title 18 section 2, including by aiding and abetting and willfully causing Boyland auto bgmc llc's violations of USC Title 18 section 1341 and 1343, along with prior and subsequent violations, occurring during or around june 2022, at least in part in Oak Creek Wisconsin.

(179)
Automotive experts is a direct marketing business that peddles the written prize notices that were used for targeting the recipients for deceptive advertising.

(180)
Automotive experts received income from a pattern of racketeering activity that they participated In as a principal, and used some portion of that income in the operation of an enterprise the activities of which affect interstate commerce. In violation of USC title 18 1962 (a).

Automotive experts also conspired, wit Boyland auto bgmc llc, for Boyland auto bgmc llc to receive income from a pattern of racketeering activity that they participated in as a principal, and to use some part of that income in the operation of an enterprise the activities of which affect interstate commerce. In violation of USC title 18 1962 (d).

(181)
**Count 9, National Business Brokers aiding and abetting and willfully causing, violations of USC title 18 1956 and 1957, and conspiring.**

The above predicate acts include acts which National Business Brokers participated in as a principal, including violations of USC title 18 1956 and 1957 engaged in by Boyland auto bgmc llc and Kunes Buick GMC.

(182)
 National Business Brokers was a party to the transaction between Boyland auto bgmc llc and Kunes Buick GMC, and had pushed to make that transaction happen. They willfully caused and aided and abetted Boyland auto bgmc llc in fraudulently transferring their assets to Kunes Buick GMC. They knew that Boyland auto bgmc llc was subject to an enormous claim by creditors. Through their employee, a former regional vice president of General motors, Scott Mackie, who had transitioned to working for national business brokers, facilitated the money laundering

26

transaction between the two GMC entities, Kunes Buick GMC and Boyland auto bgmc llc d/b/a All Star Buick GMC.

(183)
National Business Brokers, received income directly or indirectly from a pattern of racketeering activity which they participated in as a principal, and used or invested some portion of the proceeds in the operation of an enterprise the activities of which affect interstate commerce. In violation of USC title 18 1962 (a).

Also,National Business Brokers conspired for Kunes Buick Gmc and Boyland auto bgmc llc to receive income from a pattern of racketeering activity that they participated in as principals, and for them to use or invest some portion of that income in the operation of enterprises the activities of which affect interstate commerce.

(184)
**Count 10, witness tampering predicates and 1962 violation by Kaufman and Dolowich**.

Kaufman and Dolowich acting through their agent Stefan Dandelles, on behalf of Dorian Boyland and Boyland auto bgmc llc, did engage in misleading conduct with intent to hinder delay or prevent the communication to law enforcement officer or a judge of the United States information relating to the commission or possible commission of a federal offense.

(185)
The acts constituting witness tampering are laid out above in the count of witness tampering against Boyland auto bgmc llc.

(186)
Stefan Dandelles engaged in mislead conduct, or attempted to corruptly persuade, the named plaintiff into signing a non-disclosure. Kaufman and Dolowich, acting through Stefan Dandelles, misrepresented the enforceability of a non binding stipulation between the parties. The natural and probable consequence of signing the non-disclosure would have been to hinder, delay, or prevent, named plaintiffs communication of relevant information to relevant persons. Kaufman and Dolowich, acting through Stefan Dandelles also misrepresented the specific nature of an agreement with an intent to mislead, trying to deceive me into believing that a stipulation between the parties was a settlement unto itself.

(187)
So there were at least two times that they engaged in misleading conduct, constituting witness tampering, which occured on two different days. The first was July 28th 2022, where they tried to trick me into believing that a non binding consent between parties was enforceable, and the second was August 1st 2022, where they tried to trick me into believing that a stipulation was a settlement unto itself. Each of those acts was its own act of witness tampering.

(188)

There's a third act of witness tampering where they used a notary to engage in misleading conduct toward the court. They falsely certified that I had been served with a motion via the electronic court system, prior To the time that I opted into the case as an electronic party. I hadn't yet opted in as an electronic party and they claimed that I was served by electronic service. This was on August 4th 2021 that the document was filed. On its own it may not seem like much, but it was still misleading conduct and it was still with the intent to try to hinder, delay, or prevent me from communicating the relevant information to relevant persons. I believe they retained their intent from 7-28 and 8-1, when they engaged in the additional misleading conduct on 8-4

(189)

Kaufman & Dolowich, thereby, being employed by or associated with an enterprise, including Boyland auto bgmc llc, and various individuals, general motors, et al, conducted or participated in the enterprise through a pattern of racketeering activity. In violation of Wisconsin statute 946.83.

(190)

Further, Kaufman & Dolowich, at the time Kaufman Dolowich and Voluck, being employed by or associated with an enterprise the activities of which affect interstate commerce, including Boyland auto bgmc llc, various individuals, et al, participated in the conduct of that enterprises affairs through a pattern of racketeering activity. In violation of title 18 1962 (c).

(191)

**A statement of the federal rico claim against Dorian Boyland**.

Dorian Boyland, conspired to violate the provisions of USC Title 18 1962. Being in control of Boyland auto bgmc llc, Dorian Boyland conspired with National Business Brokers, Scott Mackie, Kaufman and Dolowich, Kunes Buick GMC, and others, he planned and coordinated with them for the purposes of National Business Brokers, Kunes Buick GMC, General Motors, and others, receiving income from patterns of racketeering activity that they participated in as principals within the meaning of USC title 18 section 2, and for those people to use or invest that income in the operation of enterprises the activities of which affect interstate commerce.

(192)

I'm also arguing that a criminal conspiracy exceptions to the intracorporate conspiracy doctrine applies, as well as personal stake exceptions, et al, each of which will be relevant for a number of defendants.

**William Louis Armstrong Vs Boyland auto bgmc llc, et al.**

(193)
Signature of the plaintiff and other information.

William Louis Armstrong III
2580 S 34th st, Milwaukee Wi, 53215
414-248-1487
Williamlouisarmstrong93@gmail.com

**William Louis Armstrong,**
**2580 S 34th St Milwaukee, Wi 53215**
**In the capacity of a class representative.**
**Plaintiff**

**VS**

**Boyland Auto BGMC, LLC**
**606 SE 117TH AVE, SUITE 100, VANCOUVER , WA 98683.**
**Defendant,**
**General Motors**
**100 Renaissance Center, Detroit, MI 48243**
**Defendant,**
**Kunes Buick GMC**
**7020 S 27th St Suite A, Oak Creek, WI 53154**
**Defendant,**
**Automotive Experts LLC**
**421 9TH ST, NEW ORLEANS, LA 70118 (domicile address)**
**5500 PRYTANIA ST #534, NEW ORLEANS, LA 70115 (mailing address)**
**Defendant,**
**National Business Brokers**
**100 Spectrum Center Drive ,Suite 900, Irvine, CA 92618**
**Defendant,**
**Dorian Boyland**
**6219 LOUISE COVE DRIVE, WINDERMERE, FL 34786**
**Defendant,**
**Kaufman Dolowich**
** 30 N La Salle St Suite 1700, Chicago, IL 60602**
**Defendant**

**Federal case number:**
**Name of the court: Eastern District of Wisconsin**
**Venue: Milwaukee**
**Designation: Jury Demand**
**Case type: Civil**
**Case description: Racketeer Influenced and Corrupt Organizations**
**Case code: 470**
**Class action. Claim over dollar limit**

Plaintiff William Louis Armstrong hereby demands a jury in the above titled matter, as fo all issues between the parties, and is demanding a jury of twelve.

William Louis Armstrong, 2580 S 34th st Milwaukee Wi 53215, plaintiff.
Williamlousarmstrong93@gmail.com  / 414-248-1487